1  Robert E. Schroth, Jr. - BAR NO. 212936
2  David R. Will – BAR NO. 315585
   SCHROTH, SCHROTH & MADIGAN
3  3200 Fourth Avenue, Suite 101
4  San Diego, CA 92103
   Telephone: (619) 233-7521
5  Attorneys for Plaintiff, MORGAN MCNEILL

## UNITED STATES DISTRICT COURT,
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN MCNEILL,<br><br>    Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE, dba LEGENDS ESCROW, and DOES 1 to 30, inclusive,<br><br>    Defendants. | CASE NO. **'17CV1326 JM   KSC**<br><br>**PLAINTIFF MORGAN MCNEILL'S COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2601 ET SEQ.;**<br><br>**(2) FAILURE TO PROVIDE MEAL BREAKS PURSUANT TO LABOR CODE § 226.7 & 512;**<br><br>**(3) FAILURE TO PROVIDE REST BREAKS PURSUANT TO LABOR CODE § 226;**<br><br>**(4) VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. § 201, ET SEQ.;**<br><br>**(5) VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA"), 29 CFR 1630.2, ET SEQ.;**<br><br>**(6) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br><br>**(7) RETALIATION IN VIOLATION OF LABOR CODE § 98.6**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Morgan McNeill ("McNeill"), by and through her attorney Robert E. Schroth, Jr., and complains of the Defendants, Chicago Title, and Legends Escrow, and Does 1 through 30, inclusive, as follows:

## I.
## **JURISDICTION AND VENUE**

1. Plaintiff's first cause of action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

2. Plaintiff's second cause of action involves application of California Labor Code § 512 and 226.7. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

3. Plaintiff's third cause of action involves application of California Industrial Welfare Commission Wage Orders. This court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

4. Plaintiff's fourth cause of action involves application of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. This court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

5. Plaintiff's fifth cause of action involves application of the California Fair Employment and Housing Act ("FEHA"), 29 CFR 1630.2(o)(3). This court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

6. Plaintiff's sixth cause of action involves application of California public policy and common law. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

7. Plaintiff's seventh cause of action involves application of the California

Labor Code.  This Court has jurisdiction over this claim pursuant to 28. U.S.C. § 1367.

8.     The claims asserted in this action arose within this district and the alleged discrimination and damage occurred in this district.  Venue of this action is proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391.

## PARTIES

9.     Ms. McNeill is, and at all times material hereto was, a citizen of the State of California, residing in San Diego County, California.

10.    Ms. McNeill is informed and believes, and upon that basis alleges, the defendant Chicago Title is, and was at all times material hereto, a California corporation doing business in this district, having its principal place of business in San Diego, California.

11.    Ms. McNeill is informed and believes, and upon that basis alleges, the defendant Chicago Title is, and was at all times material to, doing business as Legends Escrow, a business within this district, having its principal place of business in San Diego, California.

12.    McNeill is informed and believes, and upon that basis alleges, that Diane Lindsey ("Lindsey") is, and at all times material hereto was, an agent, employee and servant of the master, Chicago Title, and was acting within the course and scope of her agency or employment authority as such, with knowledge, express or implied, of Chicago Title. Lindsey, acting under authority of Chicago, terminated McNeill while she in the process of obtaining necessary FMLA paperwork from her physician, and caused McNeill to be terminated from her employment in violation of the FMLA. Accordingly, adherence to the fiction that Lindsey was acting outside the scope of her authority would permit abuse of the corporate

privilege and would sanction fraud and promote injustice.  Lindsey has not been named as a defendant in this action to the extent prohibited by law.

13.   The true names and capacities for the individual, corporate, associate or otherwise of defendants, DOES 1-30, inclusive and each of them are unknown to McNeill, who therefore sues such defendants by such fictitious names.  McNeill will amend this Complaint to show their true names and capacities when the same have been ascertained.  McNeill is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately thereby to plaintiffs as herein alleged.

14.   McNeill is informed and believes and thereon alleges that at all times material herein, each of the defendants designated herein including the fictitiously designated defendants are negligently and wrongfully responsible in some manner for the events and happenings herein referred to, and their negligent and/or wrongful acts and omissions caused the injuries and damages to the plaintiffs as herein alleged either through the defendants' own negligence and wrongful conduct or through the defendants' own negligence and wrongful conduct or through the conduct of one of their agents, servants, employees, representatives and/or joint ventures, or due to their own ownership, rental, use, supervision, entrustment, leasing, management, employment or permissive use of the instrumentality causing the injury and damages herein alleged.

15.   McNeill is informed and believes and thereon alleges that at all times material herein, each of the defendants was an agent employee, joint venturer, alter-ego, employer and representative of each of the remaining defendants, and at all times mentioned herein, defendants were acting within the time and within the

authority, the course and scope of said agency, employment as a member of a joint venture, as an alter-ego and/or within the said representation and with the full knowledge, ratification, permission and consent of the remaining co-defendants, and each of them.

## II.

## FACTUAL ALLEGATIONS

16. On August 28, 2015, McNeill was hired by Chicago Title, dba Legends Escrow.

17. At all times material hereto, McNeill was employed by Chicago Title, dba Legends Escrow, as an Escrow Assistant and Junior Escrow Officer.

18. During McNeill's employment at Chicago Title, McNeill received praise from her supervisors, Joe Salvatore and Susan Maser, stating that Chicago Title had big plans for her, her performance surpassed their expectations, and the clients loved her.

19. In early September of 2016, McNeill had her 1 year review with her supervisors: Susan Maser, Joe Salvatore, and Diane Lindsey.  McNeill was informed by her supervisors that she was doing a fabulous job.  McNeill was given a raise and a bonus, and told that Chicago Title would discuss giving McNeill another bonus in the following months.

20. At no point prior to her termination was McNeill informed that she had been written up or reprimanded for her job performance at Chicago Title.

21. During McNeill's employment at Chicago Title, McNeill was diagnosed with rheumatoid arthritis and fibromyalgia.

22. McNeill's medical conditions required only bi-monthly appointments with her rheumatologist and occasional infusions.

23. During one of her medical appointments, McNeill's doctor advised McNeill that she should be on "FMLA" and that he would start the paperwork to put McNeill on FMLA.

24. In early September of 2016, McNeill informed the Human Resources department at Chicago Title that her doctor was in the process of placing McNeill on "FMLA".

25. On or about September 28, 2016, McNeill spoke to her manager Diane Lindsey about her medical condition and informed her that her doctor had started the process to put McNeill on "FMLA". Diane Lindsey's response was, "I don't know what that is, but that is not going to work for us."

26. Approximately one week prior to her termination, McNeill informed her supervisor Vickie Everly that her doctor had finished her FMLA paperwork, and that she was going to pick up the FMLA paperwork at her next appointment the following week and immediately submit the FMLA documents to Chicago Title.

27. McNeill was terminated on November 11, 2016, approximately one week after she informed her supervisor that she was obtaining the necessary FMLA paperwork, and despite her FMLA claim being opened and the deadline for providing necessary paperwork not yet passing. The stated reason for her termination was, "failure to follow direction, negative attitude, continue to waste other employee's time voicing negative opinions."

28. McNeill's FMLA request was still processing when she was terminated on November 11, 2016.

29. McNeill was able to perform the essential functions of her job as evidenced by the praise she received from her supervisors and her annual raise and bonus.

30. McNeill believes and alleges, that her request to be covered by FMLA was

the basis of her termination, and that her termination was retaliation for requesting to be placed on FMLA.

31.  During her employment with Chicago Title, McNeill was denied rest and meal periods.

32.  During her employment with Chicago Title, it was workplace custom to require employees to eat lunch at their desk while working.

33.  McNeill, and other employees, did not receive 10 minute rest periods.

34.  McNeill, and other employees, were not given meal breaks.  Per Chicago Title custom, McNeill and other employees were required to work through their lunches and eat at their desks while continuing to work.

35.  Chicago Title required McNeill, and other employees, to work in excess of 8 hours a day without overtime compensation.

36.  Chicago Title required McNeill, and other employees, to "clock out" after 8 hours but stay in the office and continue to work after the 8 hour shift had ended.

37.  McNeill, and other employees, were not allowed overtime pay, but were expected to work overtime hours.

38.  When McNeill was in the office past 5:00 p.m., (over 8 hours) her supervisors would constantly ask, "You're not on the clock, right?"

39.   Following her termination, McNeill became emotionally and physically distressed.  McNeill's rheumatoid arthritis and fibromyalgia symptoms have only worsened as a result of the stress of her termination and unemployment.

40.  McNeill is informed and believes, and on that basis alleges, that in performing the actions alleged in paragraphs 16 through 39 above, defendant failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against McNeill by

terminating her while she was obtaining the FMLA paperwork from her doctor.

41.     McNeill is informed and believes, and on that basis alleges, that, as a proximate result of defendant's conduct: (1) McNeill's right to extended leave to care for her health was interfered with and impaired, and (2) Chicago Title's termination of McNeill was in retaliation to McNeill requesting to be on FMLA so she could care for herself and obtain necessary treatment.

42.     As a proximate cause of defendant's conduct, McNeill was required to expend significant personal sums for her medical necessities and her own physical and mental well-being.  Additionally, as a proximate cause of defendant's conduct, McNeill has been unemployed and has been and will continue to experience hardships to provide food, shelter, and clothing for both herself and her family, and to the provide the medical care necessary for herself to assure her continued treatment.  These expenditures and costs are consistent with those recoverable for violation of the FMLA.

## III.

## CAUSES OF ACTION

### A.

### FIRST CLAIM FOR RELIEF

**(Compensatory Damages and Declaratory Relief Under the FMLA)**

**29 U.S.C. § 2617(a)**

43.     McNeill realleges and incorporates by reference each and every allegation contained in the preceding paragraphs.

44.     McNeill is informed and believes, and on that basis alleges, that Chicago Title qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that McNeill is an "eligible employee" as that term is defined in the

FMLA, 29 U.S.C. § 2611(2).

45. McNeill is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and that McNeill was denied her entitlement to leave as prescribed in FMLA.

46. McNeill is informed and believes, and on that basis alleges, that McNeill was entitled to restoration to her position as described in the FMLA, 29 U.S.C. § 2614(1), and that McNeill was denied restoration to the same or equivalent position as prescribed in FMLA.

47. McNeill is informed and believes and on that basis alleges that defendant is responsible under the FMLA, 29 U.S.C. § 2617(a).

48. As the result of McNeill's termination, McNeill has incurred, and is now incurring, a loss of wages and continuing health care and medical expenses, all within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial, but believed to exceed $25,000. These costs include, without limitation, lost wages and medical expenses, back pay from the effective date of termination, lost health care and medical expenses from the date of termination, and lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617. The costs also include attorneys' fees that, as of the date of this complaint, exceed $10,000.

49. McNeill is informed and believes, and on that basis alleges, that pursuant to 29 U.S.C. § 2617(a), defendant is liable to McNeill for the costs described in the preceding paragraph.

50. An actual controversy now exists between McNeill on the one hand, and defendants, on the other, in that McNeill contends that defendant is liable under

-9-
Plaintiff Morgan McNeill's Complaint
McNeill v. Chicago Title, et al.

1 the FMLA, 29 U.S.C. § 2617(a), for all lost wages, benefits, and costs to be incurred by McNeill and reinstatement of McNeill to her previous position of Escrow Assistant and Junior Escrow Officer, in connection with the alleged employment discrimination perpetrated by Chicago Title. McNeill is informed and believes, and on that basis alleges, that the defendant contends in all respects to the contrary.

51. A declaration of the rights and obligations of the parties, pursuant to FMLA, 29 U.S.C. § 2617(a), binding in any subsequent action or actions to recover further costs incurred by McNeill, is appropriate and in the interests of justice.

## B.

## SECOND CLAIM FOR RELIEF

**(Failure to Provide Meal Periods Pursuant to Labor Code § 226.7 and 512)**

52. McNeill realleges and incorporates by reference each and every allegation contained in paragraphs 1-51, inclusive, above.

53. Labor Code § 226.7 and 512 and the applicable IWC Order require an employer to pay an additional hour of compensation for each meal period the employer fails to provide. Employees are entitled to a first meal period of at least thirty (30) minutes for shifts over 5 hours, to be provided within the first five (5) hours of the shift, and a second meal period of at least thirty (30) minutes for shifts over ten (10) hours. If an employee is entitled to a second meal period, it must be provided after no more than ten (10) hours of work. Chicago Title also maintained a policy of failing to inform Plaintiff of these rights.

54. McNeill routinely and consistently worked shifts over five (5) hours.

55. Chicago Title routinely failed to provide McNeill with proper meal periods

of not less than thirty (30) minutes as required by the Labor Code during the relevant time period. Chicago Title failed to inform McNeill that she was entitled to a thirty (30) minute meal period within the first five (5) hours of her shift and a second thirty (30) minute meal period for shifts over ten (10) hours. As a result, McNeill regularly missed her meal periods.

56. Pursuant to Labor Code § 226.7, McNeill is entitled to damages in an amount equal to one (1) hour of wages per missed meal period in an amount to be proven at trial.

## C.

## THIRD CLAIM FOR RELIEF

**Failure to Provide Rest Periods Pursuant to Labor Code § 226.7**

57. Plaintiff restates and incorporates herein by reference each and every allegation contained in paragraphs 1-56, inclusive, above.

58. Labor Code § 226.7 requires an employer to pay an additional hour (1) of compensation for each rest period the employer fails to provide. Employees are entitled to a paint ten (10) minute rest break for every four (4) hours worked (or major fraction thereof). Defendant failed to inform Plaintiff of this right.

59. McNeill routinely and consistently worked shifts with no rest breaks. Chicago Title failed to advise McNeill of her right to take rest breaks and failed to provide McNeill breaks of not less than ten (10) minutes as required by the Labor Code and applicable IWC Order during the relevant time period.

60. Pursuant to Labor Code § 226.7, McNeill is entitled to damages in an amount equal to one (1) hour of wages per missed rest period in an amount to be proven at trial.

## D.

-11-
Plaintiff Morgan McNeill's Complaint
McNeill v. Chicago Title, et al.

## FOURTH CLAIM FOR RELIEF

### Violation of Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

61. Plaintiff restates and incorporates herein by reference each and every allegation contained in paragraphs 1-60, inclusive, above.

62. McNeill is informed and believes, and on that basis alleges, that Chicago Title qualifies as an "employer" as that term is defined in FLSA, 29 U.S.C. § 203(e), and McNeill is an "employee" as that term is defined in FLSA, 29 U.S.C. § 203(e).

63. Under 29 U.S.C. § 206-207, employers are required to compensate their employees for all hours worked.

64. Under 29, U.S.C. § 207(a)(1), when an employee works in excess of 40 hours per week, the employee must be paid at "not less than one and one-half times the regular rate at which [s]he is employed."

65. McNeill was regularly expected to "clock out" but continue to work after her 8 hour shift. She was not regularly allowed overtime pay, but was expected to work overtime hours. When McNeill would be working in the office past 5:00, her supervisors would ask, "You're not on the clock, right?"

66. Pursuant to 29 U.S.C. 216, and California Labor Code § 203, McNeill is entitled to overtime damages, including back-pay, front-pay, and waiting time penalties, in an amount to be proven at trial.

E.

## FIFTH CLAIM FOR RELIEF

### Unlawful Discrimination Based on Disability in Violation of the Fair Employment and Housing Act ("FEHA") – Cal. Gov. Code § 12900, et seq.

**and 29 C.F.R. 1630.2(o)(3).**

67.     Plaintiff restates and incorporates herein by reference each and every allegation contained in paragraphs 1-66, inclusive, above.

68.     McNeill is informed and believes, and on that basis alleges, that Chicago Title qualifies as an "employer" as that term is defined in Cal. Gov. Code § 12926(d), and McNeill is an "employee" as that term is defined in Cal. Gov. Code § 12926(c).

69.     Under Cal. Gov. Code § 12940, it is a violation for an employer to terminate an employee based on their physical disability.

70.     Under Cal. Gov. Code § 12940, an employer may terminate an employee with a physical disability if they are unable to perform the essential functions of their job without reasonable accommodations.  That is not the case here.  McNeill was able to perform the essential functions of her job, as evidence by her ability to work above satisfactory requirements while receiving praise for her work and earning an annual raise and bonus less than two months prior to her termination.

71.     McNeill is informed and believes, and on that basis alleges, that McNeill was terminated on the basis of her disability and not for any performance based rationale.

72.     Prior to McNeill's termination, McNeill informed both her supervisors and the Human Resources department of Chicago Title of her medical conditions and disability.

73.     Under California Code of Regulations § 11068 and 29 C.F.R 1630.2(o)(3), once an employer is made aware of an employee's disability, they must make reasonable accommodations for the disability and initiate an informal, interactive process with the individual with a disability to determine the nature of the

accommodation necessary to enable the individual to perform the position's essential functions.

73. Chicago Title never implemented a process to determine the nature of McNeill's disability or the necessity of any accommodations she might require. Additionally, Chicago Title did not believe that McNeill could not perform the essential functions of her position, as evidenced by her continued praise by her superiors, and annual raise and bonus less than 2 months prior to her termination.

74. As a direct and proximate result of Chicago Title's conduct, McNeill has suffered special damages in the form of lost earnings, benefits, and out-of-pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Chicago Title's conduct, McNeill will suffer additional special damages in the form of lost future earnings, benefits, and other prospective damages in an amount according to proof at the time of trial.

75. As a further direct and proximate result of Chicago Title's conduct, McNeill has suffered a loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental and emotional pain, and distress and discomfort, all to her detriment and damage in the amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

76. By reason of the conduct of Chicago Title herein, McNeill has retained attorneys to prosecute her claims under the FEHA. Plaintiff is therefore entitled to recover reasonable attorney's fees and costs pursuant to Cal. Gov. Code § 12965(b), in addition to other damages as provided by law and as alleged herein.

**F.**

**SIXTH CLAIM FOR RELIEF**

**Wrongful Termination in Violation of Public Policy**

77. Plaintiff restates and incorporates herein by reference each and every allegation contained in paragraphs 1-76, inclusive, above.

78. At all times mentioned herein, California Constitution's (Art. I, § 7-8) bad on disability discrimination was in full force and effect and was binding on Chicago Title.

79. At all times relevant hereto, the fundamental, formally established public policy of the State of California as expressed in the California Constitution, at Art. I, § 8, prohibited discrimination based on disability.

80. The acts of Chicago Title, as alleged herein, were in violation of California Constitution, at Art. I, § 8, and the formally established public policies of the State of California.

81. Chicago Title's violation of public policy created intolerable, hostile, and offensive working environments for McNeill. The aforementioned acts caused Plaintiff to be discharged from employment in that Chicago Title intentionally terminated McNeill because of her disability; rheumatoid arthritis and fibromyalgia.

82. As a proximate cause of Chicago Title's acts and omissions, McNeill was terminated from her employment and sustained losses in earnings and other employment benefits.

83. As a proximate result of Chicago Title's acts and omissions, McNeill has suffered and continues to suffer general damages consisting of compensation for having to endure and oppressive work environment, in a sum according to proof.

84. Chicago Title committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring McNeill, with an

improper and evil motive amounting to malice, and in conscious disregard for the rights of McNeill.  In light of Chicago Title's willful, knowing, and intentional acts against McNeill, McNeill seeks an award of punitive and exemplary damages in an amount according to proof.

### G.

### SEVENTH CLAIM FOR RELIEF

### Retaliation in Violation of Labor Code § 98.6

85.  Plaintiff restates and incorporates herein by reference each and every allegation contained in Paragraphs 1-84, inclusive, above.

86.  McNeill, while employed by Defendant, Chicago Title, informed Chicago Title that McNeill had been diagnosed with rheumatoid arthritis and fibromyalgia.

87.  McNeill informed her supervisor, Diane Lindsey, that McNeill's doctor had started the paperwork to place McNeill on FMLA.  Diane Lindsey's response was, "that is not going to work for us."

88.  Chicago Title, in retaliation for Plaintiff's desire to be placed on FMLA, subjected McNeill to retaliation through adverse employment actions, including terminating Plaintiff.

89.  As a proximate result of the above-mentioned acts of Chicago Title, McNeill has been damages in a sum as may be proven at the time of trial.

### IV.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

<u>AS TO THE FIRST CLAIM FOR RELIEF FOR COMPENSATORY DAMAGES AND DECLARATORY RELIEF UNDER THE FMLA.</u>

1. For compensatory damages and other costs incurred by McNeill according to proof, but believed to exceed $25,000.

2. For McNeill's reasonable attorneys' fees.

3. For a judicial declaration that the defendant is liable under the FMLA, 29 U.S.C. § 2617(a) for all past, present and future lost wages, employment benefits and other costs incurred by McNeill in connection with McNeill's termination of employment by Chicago Title, including, without limitation, reasonable attorneys' fees. For damages according to proof, including lost earnings and other related employee benefits, both past and future;

## AS TO THE SIXTH CLAIM FOR RELIEF FOR DAMAGES FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

8. For damages according to proof, including lost earnings and other employee benefits, both past and future;

9. For an award of punitive damages insofar as the intolerable working conditions that Defendants intentionally and knowingly created, and which caused McNeill's termination, was despicable conduct outside all decent bounds tolerated by society. Said punitive damages should be in an amount appropriate to punish or set an example of the Defendants to deter other from engaging in similar conduct;

10. For compensatory damages according to proof, including lost earnings and other employee benefits, and damages for emotional distress including, but not limited to depression, anxiety, sleeplessness, humiliation, and embarrassment;

11. For interest on lost earnings at the prevailing legal rate from November 11,

2016;

12.  For reasonable attorney's fees incurred by McNeill in obtaining the benefits owed to her by Defendants during the course of her employment, and as otherwise allowable by law;

AS TO ALL CLAIMS

13.  Waiting time penalties according to proof;

14.  Back-pay and overtime according to proof;

15.  Costs of suit incurred herein; and

14.  Such other and further relief as the Court deems just and proper.

DATED:  June 28, 2017                    **SCHROTH, SCHROTH & MADIGAN**

                                                       Attorneys for Plaintiff

                                       By:___*/s/ David R. Will.*_____
                                           David R. Will, Esq.

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that pursuant to Rule 38, Fed. R. Civ. P. and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury against Defendants, and each of them, for each cause of action so triable.

DATED: June 28, 2017            **SCHROTH, SCHROTH & MADIGAN**

By: /s/ *David R. Will*_____
    David R. Will, Esq.
    Attorneys for Plaintiff,
    MORGAN MCNEILL